# APPROPRIATION OF PROPERTY—EVIDENCE.

8 Dec. 621

[ Lorain Circuit Court, May 3, 1895.)

Caldwell, Hale and Marvin, JJ.

LORAIN ST. RY. CO. v. CATHARINE SINNING.

1. COMPETENCY OF QUESTIONS TO WITNESS, MAKING NO ALLOWANCE FOR BENEFITS.

At the trial of an action, brought by a railroad company, to appropriate land for a right of way and to assess damages for injuries, resulting to the adjacent premises of the land owner, the general rule is, that no deductions from the damages to be assessed

for injuries to such adjacent premises are to be made on account of any benefits, and, until it affirmatively appears that the case on trial comes within some exception to that rule, it is proper to ask questions of witnesses upon the assumption that such case is within the general rule, allowing no deductions for benefits.

**2. Competency of Evidence as to Fair Market Value of Land.**

It is proper for witnesses, who are qualified as to a knowledge of the value of the lands sought to be appropriated, to testify what the fair market value of such lands is.

**3. Right to Call Attention of Witness' on Re-Examination to Particular Sales of Land.**

In such an action, one of the defendant's witnesses testified as to the value of the land sought to be appropriated, and, on cross-examination, his attention was especially called to sales of land in the vicinity made at a very low figure.

*Held:* On re-examination it was competent to call the attention of the witness to sales of land made at a higher figure.

**4. Competency of Statements of Witness as to Value of Land.**

At the trial of such action a witness giving his judgment as to the value of the land appropriated used the following language: "I put that at $200. I think, if I owned land there I should be satisfied with $200 per acre, if it was my property."

*Held:* Such answer was not prejudicial to the railroad company.

**5. Elements of Compensation to be Considered in Computing Value.**

At such trial the court submitted the following proposition in its charge to the jury: "Where a piece of land is taken and severed by the appropriation from its connection with the other land of the owner, some elements of compensation necessarily enter into the computation besides the abstract value of the number of feet or acres of ground taken. These elements of compensation may be comprehended in the following. 1. The abstract value of the land taken. 2. The value arising from the relative situation of the land taken in connection with the residue of the owner's land, from which it is taken. 3. The effect upon the value of the residue of the owner's land, arising from the use for which the appropriation is made."

*Held:* Such proposition was not erroneous.

**6. Rule of Compensation.**

In such action, the difference in the value of the land owner's property with the appropriation and that without it is the rule of compensation.

**7. When Incidental Benefits will not be Set Off Against Incidental Damages.**

In the absence of anything in the proof tending to show local peculiar benefits, resulting to such adjacent premises of the defendant by reason of such proposed construction, not common to the public, it is not proper to instruct the jury to deduct the amount of incidental benefits from the amount of incidental damages.

MARVIN, J.

No. 317 is a case pending here upon a petition filed by the Lorain Street Railway company against Catharine Sinning to reverse the judgment of the court of common pleas and of the probate court of this county. This action was originally brought in the probate court of this county by the Lorain Street Railway company to appropriate and have damages assessed for the appropriation of certain lands owned by the defendant, to be used for the purpose of an electric railway.

And after the statutory proceedings were had, preliminary to the assessment of the damages by the probate court, a jury was called and the question of the damages to be assessed after the appropriation, tried to that jury in that court. That action proceeded to a verdict, the jury found a certain amount as the value of the property appropriated, and a certain amount as the damages to the adjacent property of the defendant, Sinning, and judgment was entered upon such verdict; that was affirmed by the court of common pleas, in a proceeding in error in that court, and it is to reverse these judgments that this case is prosecuted here.

It is complained on the part of the plaintiff in error that the probate court erred in the admission of certain testimony, and attention is called to the fourth page of the bill of exceptions as the first place in which there is such error. Charles Sinning was upon the witness stand, the husband of the defendant, and he was asked this question; I ought, however, to say that prior to the question which I am about to read, he had testified as to what the land of Catharine Sinning was worth per acre as he believed, and then was asked, with a view to getting his judgment as to what should be deducted by reason of the construction of the street railroad: "How much would it be worth per acre after the improvement, that is to say how much would this land of Catharine Sinning's, upon which you have given a value as it now is, be worth per acre after the improvement?" To this question objection was made by the plaintiff, which was overruled. The ground of the objection was, that to permit him to answer that question was to get to the jury an estimate of the damages without any deduction on account of any benefits, and that this might be a case in which there should be, in considering the damage to the property not taken, but adjacent to that taken, certain deductions on account of benefits. Later on I shall say something which I do not now deem necessary to say as to this question.

It seems to us that whatever the fact may be as to this being a case in which there may be deductions on account of benefits, that is to say, deductions from the amount to be assessed for injury to the premises not taken on account of benefits to such premises, that it would be proper to ask this question. The general rule is, that no deductions from the damages to be assessed for the injury to the premises not taken are to be made on account of any benefits, and until it affirmatively appears that a given case comes within some exception to that rule, it is proper to ask questions upon the assumption that the case is within the general rule, allowing no deductions for benefits. With this understanding of the law, we find no error in the ruling of the court, permitting the question to be answered.

Later on in the trial, Lewis D. Boynton was upon the stand as a witness for the defendant Sinning, and having qualified and testified as to what he considered the land of Mrs. Sinning to be worth before the improvement, he was asked by counsel for the defendant this question: "Now, Mr. Boynton, after this railroad is constructed through there, at an angle of seventy-one feet from a right angle, trolley wire for propelling the cars, strip sixty-six feet in width, what would be the fair market value of the farm then per acre?" He was permitted to answer. The next question asked of him was: "What value would you place upon the land to be taken?" Objection was made to both of these questions. We think the first question was entirely proper. We are unable to understand what serious objection could be made to it. Certainly the land owner was entitled to have, from a witness who was qualified to answer, his judgment as to what the premises adjacent to those to be taken were worth, both before and after the appropriation of the strip to be taken.

The second question, "What value would you place upon the land to be taken," was not answered, and hence, whatever may be said as to the propriety of asking the question, neither party was prejudiced by its being asked, but, objection having been made to that question, this question was immediately asked of the witness: "What is the fair market value of the land sought to be taken?" This question he was permitted to answer. We see no reason why he ought not to have been permitted to answer. He seems to have properly qualified as to a knowledge of the value of such lands, and, having thus qualified, it was entirely proper that he should be permitted to state what the fair market value of this land sought to be taken was.

Later on, Thomas Negus was upon the stand as a witness for the defendant, Sinning. He had been examined by counsel for Sinning, and cross-examined by counsel for the railway company, and was now undergoing a redirect examination by counsel for Sinning. In his direct examination he had been asked as to

his knowledge of sales of land in the vicinity, and had given his estimate of the value of the land appropriated, and of the value of the adjoining land of Sinning, both before and after the building of the proposed railroad. Then, upon cross-examination, he had been asked if he had heard of land in that vicinity being sold for forty dollars an acre, and whether he knew of land thereabouts having been sold for one hundred dollars an acre, and then, upon his redirect examination he was asked this question: "You were asked what you have heard about the market value of lands; had you heard of the company buying three acres of Mr. Carlin for nine hundred dollars?" This question was objected to by counsel for the railway company, the objection was overruled, and an exception taken. Now, it is urged as against this ruling, that the fact that there had been a cross-examination in which the witness had been asked if he knew that lands thereabouts had been sold for one hundred dollars an acre and for forty dollars an acre, did not justify the asking of this question, upon redirect examination, while, on the other hand, it is urged that this question was but a fair redirect examination. We are cited by counsel for the defendant in error to the case of *Shattuck* v. *Stoneham,* Branch R. R., found in the 6th Allen, beginning at page 115, and also to the last volume of Rice on Evidence, p. 604.

The case in 6th Allen, we think, is not near enough like this case to afford us very much light. The citation from Rice is a discussion of what the purpose and office of the re-examination of a witness is, but we do not think that this last authority named justifies this question, and yet we are not satisfied that there was such error in allowing it to be answered as would justify a reversal on that ground.

It was treading very close upon dangerous ground, if not clear up to the danger line, but we have decided that the case should not be reversed because of that. There seems to us to be reason for saying that, an injustice might be done the land owner if the attention of a witness, who has testified as to the value of land, is upon cross-examination especially called to sales of land in the vicinity made at a very low figure, if upon re-examination the attention of the same witness might not be called to sales made at a high figure. Upon direct-examination the witness gives his judgment as to the value of the land. The questions suggested, put upon cross-examination, are with a view to satisfying the jury that the estimate of value made by the witness is too high, and, if he might not upon re-examination have his attention called to sales of land which had been made at a higher figure, the impression might be left with the jury that he had nothing upon which to base his estimate, except these sales at a low figure, and that his estimate was therefore too high.

Still later in the trial, Richard Baker was upon the stand as a witness for the defendant, Sinning, and was asked by counsel for Sinning to give his estimate of the value of the land after the construction of the railroad, without deduction on account of any possible benefits. The language of this question is a little stronger than the one put to Boynton and to Sinning, but we think it is justified, for the reasons given for the admissibility of the testimony of the two witnesses last named.

So long as the plaintiff had introduced no evidence that this was a case in which there might be an exception to the general rule forbidding deduction on account of benefits, we think it was entirely proper to ask as to the value of the land after the construction of the railroad, "without any deduction on account of any possible benefits," even if it should turn out, when the evidence of the plaintiff should be introduced, that this was a case in which benefits might be offset against injuries. This same witness was also asked and answered as follows:

"Q. Taking it in relation to the other land, its situation, how much would you consider that strip of land worth—its fair market value? (Referring to the land appropriated.)

"A. I could not put it any more than the other, because there is that much less."

" Q. Taking it in its relation with the balance of the farm ? "

" A. ,It goes across, I expect, the best part of the farm, not exactly the same acres each side. "

" Q. In giving the figures $150, what do you include ? "

" A. Between the fences. "

" Q. In making up your estimate, what do you include ? "

" A. I put that at $200. I think if I owned land there I should be satisfied with $200 per acre, if it was my property. What I say is conscientiously what I believe."

A motion was made to have this taken from the jury, and that motion was. overruled. We all know how difficult it is to make a witness understand just what he should answer as to value, and he is very likely to say "I make it so much," when he means that such estimate is his judgment as to the value of the land, and surely his adding, " I think, if I owned land there, I should be satisfied with $200 per acre, if it was my property," is not prejudicial to the railway company. An objection was made and overruled, and exception taken to the testimony of one Fleming, but it raises the same question which has already been disposed of in speaking of the testimony of other witnesses as to estimating the value of the land not taken, after the construction of the railroad, without any deduction on account of benefits.

When the plaintiff came to introduce its evidence, it called as a witness as to the value of the property, S. P. Rawson, and he being under cross-examination was asked as to the depreciation in value of the property by reason of the construction of the railroad, without allowing anything for benefits. In his direct examination he had testified as to the value of the premises before and after the construction of the railroad, and had talked about the diminution in such value, by reason of the construction of the railroad, as witnesses are very likely to do, and it is almost impossible to prevent witnesses in such a case from telling the difference in. value, instead of simply giving the value before and the value after the construction of the road.

The questions and answers upon cross-examination, to which attention is called, were as follows :

" Q. Now, leaving out of it entirely what benefits the railroad may have upon the land, leaving that all out, just as if it gave no benefits at all to Mr. Sinning, what would you say the market value would be after the appropriation?" A. " You mean without any railways?"

" Q. Without any benefits whatever, the market value." " A. I do not think it ought to diminish it over five dollars an acre, perhaps." " Q. In what would the depreciation consist?" It will be seen that, if what has already been said in relation to the testimony of the defendant's witnesses is right, the questions here were entirely proper. It is true the witness answered giving his estimate as to the diminution in value of the land. That answer was given, however, to an entirely proper question, and it does not seem to us that the answer given could prejudice the plaintiff. Had the witness, been further questioned, there can be little doubt that he would have given such a value to the premises after the construction of the road as, subtracted from the value which he had given before the construction of the road, would have made the difference of five dollars which he gave as his estimate of the diminution in value. We do not feel justified in reversing the case on account of the ruling of the court on the testimony of this witness.

Mr. Osgood, a witness for the plaintiff, was asked in cross-examination whether the railroad would injure the farm. We think there was no error in the court allowing that question to be answered.

Mr. T. M. Brush was introduced as a witness by the railway company, and was asked by counsel for the company as to what the farm would be worth, after the railroad was constructed. To that, objection was made by the defendant.

The court explained to the witness and the parties that the witness might answer, excluding benefits. He was not allowed to answer the question without excluding benefits. Having examined the entire record in this case with care, we are satisfied that it is not a case in which any benefits could have been deducted from the injuries to the property, and, that being so, there was no error to the prejudice of the plaintiff in error in the ruling of the court upon this question.

Complaint is made as to the charge of the court. The first objection made is as to what the court said on page 89 of the record. It is as follows:

"Where a piece of land is taken and severed by the appropriation from its connection with the other land of the owner, some elements of compensation necessarily enter into the computation besides the abstract value of the number of feet or acres of ground taken. These elements of compensation may be comprehended in the following:

*First*—The abstract value of the land taken.

*Second*—The value arising from the relative situation of the land taken in connection with the residue of the owner's land from which it is taken.

*Third*—The effect upon the value of the residue of the owner's land, arising from the use for which the appropiation is made.

"The defendant is entitled to a verdict for the value of the land taken, not simply to such sum as the land would bring at forced sale, or under peculiar circumstances, but to such sum as the property is worth in the market (that is to persons generally, if those desiring to purchase were found who were willing to pay its just and full value )."

I will first consider these three elements that the court said to the jury should be taken into account. It is urged that if these instructions are followed, the result will be that the land owner will receive compensation twice for the injury to the land not taken; because, after the jury has allowed for the abstract value of the land taken, if then the jury are to take into account the value arising to the land taken from its relative situation to the owner's land from which it is taken; and then again the effect upon the value of the residue of the land from which the appropriation is made; that the jury will be authorized to give twice—I do not mean necessarily twice in amount—but I mean the claim is that they will have a right at two different times and under two different heads, to fix the damages to be assessed for injury to the land not taken.

I am not sure that the probate court in giving this instruction copied the exact language of the supreme court of Ohio, used in the case of the *Cleveland and Pittsburgh R. R. Co.* v. *Ball*, as found on page 576 of the 5th Ohio State Reports, but certainly, if it did not copy exactly the language there used, it followed very nearly the language, and certainly followed the spirit of what is there said.

The reason, as it seems to me, is that these parties are entitled to the abstract value of the land taken. That land may be half an acre of land off the back part of one's farm, and this land being away from any highway might be worth very little sold by itself, but yet when taken in connection with its relation to the residue of the owner's land it might be worth just as much per acre as the balance of the farm; that is to say, you have a farm worth $100 an acre taken as a whole and take out one-half acre of it, which is just as good as the rest, but take it off the back end of the farm, away from any highway and that would not sell by itself at the same rate, but in estimating its value in a case like this the land owner should be paid in full for just what that one-half acre would be worth, and what it was worth taken with the farm, and that is all there is contained in this second paragraph. The supreme court has fixed this rule, and I think the probate court here clearly followed the rule laid down by the supreme court.

I call attention to certain language of the court which is not complained of, in connection with the balance of the charge, with a view to determine whether the charge of the court as a whole was prejudicial to this plaintiff in error. On page 90 the court used this language:

" After ascertaining the value of the property taken, you should next ascertain the depreciation, if any there be, in the value of the remainder of the defendant's land by reason of the appropriation of the strip described in the petition. If you find the value of the remaining portion of the land is not diminished by reason of the appropriation, it will only be your duty to give defendant the value of the land appropriated, but if you find the remainder of the land is depreciated in value by reason of the appropriation, you should then inquire into the amount of such depreciation in dollars and cents." And follows with this language: " To ascertain this, your first duty will be to find the market value of this property, that is the value before this strip was taken off, and then find the market value of the property after the appropriation, and the difference will be the damages to the property for which the defendant is entitled to recover. The defendant having the right to use or sell this property for any legitimate purpose, you may consider what effect the taking of this property, the manner of its use, will have upon the balance of the land. Will the property be less saleable in the market and rendered less valuable thereby? The difference in the value of the owner's property with the appropriation and that without it, is the rule of compensation. This difference must be ascertained with reference to the value of the property in view of its present character, situation and surroundings. It must not be enhanced by proving facts of a contingent or prospective character."

Now, that is fully as favorable as the plaintiff could ask to have a charge, and taken in connection with the other it seems to me gives the jury such instructions, if they were followed, as that they could not make any mistake, prejudicial to the plaintiff as to what their findings should be.

The plaintiff requested the court to instruct the jury as follows: " If the jury should find that any incidental damages will accrue to the lands of the defendant not appropriated, the jury should take into consideration and estimate any local incidental benefits that will accrue to the defendant from the construction of the work proposed, not common to the public at large, and the amount of such incidental benefits should be deducted from the amount of such incidental damages."

This the court refused to give. It is not worth while to take time here, to call attention to the case of R. R. Co. v. Ball, in the 5th of the State Reports. It is familiar to counsel on both sides of this case, and to the bar generally. The reasoning there is that, while there are to be no deductions from the value of the land taken by reason of any benefits that will accrue to the owner, yet there may be local incidental benefits, peculiar to the land owner—that is, which the land owner will derive from the improvement, and which the public generally will not derive—which may be deducted from the local incidental damage to the lands of the land owner which are not appropriated—that is, local incidental, peculiar benefits which will accrue to the land owner cannot be deducted from the value of the land taken, but may be deducted from the incidental damages to other lands, which the land owner will suffer by reason of the appropriation.

In that case there was a coal mine and coal had been conveyed to market by a river, and they built a railroad. The question was asked whether the facilities for getting coal to market would be any less, and it was held it was proper to have asked that question, but, as I have said, I have read this record, and I do not see anything in it to justify that charge. I do not see anything in the record tending to show local peculiar benefits to this defendant, Sinning, not common to the public. He is entitled to the benefits, as are the entire public, in having the railroad through there. This question was also made:

" If the jury find that the incidental benefits a     ing to the defendant, Sinning, are equal to, or exceed, any incidental dama   s which may accrue by reason of this appropriation, to her lands not appropriated, then no amount should be awarded her as damages."

As already stated, the facts in this case are not such as to have made it error to refuse this. This request was also made:

"If the jury find that the market value of the land of the defendant, Sinning, not appropriated, is as great after the appropriation as before, then no damages can be awarded to the defendant."

The court said as to this: "I give you this subject to what I have said before as to offsetting benefits. But you cannot take into consideration after the appropriation is made any benefits accruing to said land not appropriated by reason of the appropriation."

Under the facts of this case, we think that instruction was proper, that it was proper to give it as modified and there was no error in refusing to give it without modification.

On page 94 of the record this request was made:

"The jury are bound to return to the defendant, Sinning, full compensation for the 71-100 acres of land appropriated from her. If you find that the remaining property of Mrs. Sinning is increased in value rather than diminished, such increase cannot be taken into account in fixing the value of the 71-100 acres, but in that event Mrs. Sinning would be entitled to no damages to the balance of her property."

We do not think it was error to refuse that, under the facts of this case, for the reasons already given.

There was another request, but what has been already said of the charge given applies to this and to whatever else there is in the charge.

Taking the entire record together we think no error to the prejudice of the plaintiff in error is shown, and the judgment of the court of common pleas is affirmed.

---

B Dec.
628

# REAL ESTATE BROKER—CONTRACT.

[Stark Circuit Court.]

Jenner, Pomerene and Adams, JJ.